IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2013 Term

FILED

October 24, 2013

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 12-1337

BLUESTONE INDUSTRIES, INC., a West Virginia Corporation,
BLUESTONE COAL CORPORATION, a West Virginia Corporation, and
FRONTIER COAL CORPORATION, a Delaware Corporation,
Defendants Below, Petitioners

v.

TIMOTHY KENEDA,
Plaintiff Below, Respondent

_____

Appeal from the Circuit Court of Wyoming County
The Honorable Warren R. McGraw, Judge
Civil Action No. 12-1337

REVERSED AND REMANDED

_____

Submitted: September 24, 2013
Filed: October 24, 2013

Jeffrey M. Wakefield, Esq.
William J. Hanna, Esq.
Nathaniel K. Tawney, Esq.
Keith R. Hoover, Esq.
Flaherty Sensabaugh Bonasso PLLC
Charleston, West Virginia
Counsel for Petitioners

Marvin W. Masters, Esq.
Christopher L. Brinkley, Esq.
The Masters Law Firm LC
Charleston, West Virginia
Counsel for Respondent

The Opinion of the Court was delivered PER CURIAM.

SYLLABUS

"Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence." Syllabus Point 4, *Sanders v. Georgia-Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976).

Per Curiam:

Petitioners Bluestone Industries, Inc., Bluestone Coal Corporation, and Frontier Coal Company, who were the defendants below ("defendants"), seek reinstatement of a jury verdict rendered in their favor after a seven-day trial in this deliberate intent action. The jury found that the plaintiff/respondent, Timothy Keneda ("plaintiff"), failed to satisfy four of the five elements contained in *W.Va. Code* § 23-4-2(d)(2)(ii) [2005]. A plaintiff must satisfy all five elements to prevail in a deliberate intent action.

On the final day of the trial, prior to the jury deliberating, a brief conversation took place between a trial representative of defendant Frontier Coal Company and a juror. This conversation occurred on the courthouse steps as the juror was returning from the lunch recess. The trial court conducted an *in camera* hearing to determine the nature of this conversation. At the conclusion of the *in camera* hearing, the plaintiff made a motion to disqualify the juror and asked the court to replace him with an alternate juror. The circuit court granted this motion, the juror was removed and an alternate juror was seated on the jury. After the court granted the relief the plaintiff requested, the jury conducted its deliberations and ruled in favor of the defendants.

Despite receiving the relief he requested on the juror issue at the conclusion of the *in camera* hearing, the plaintiff filed a post-trial motion asking the court to set aside the verdict and to order a new trial based on the alleged improper juror contact. The circuit

1

court granted the plaintiff's motion for a new trial. The defendants subsequently filed the present appeal.

After review, we reverse the circuit court's order granting the plaintiff's motion to set aside the jury's verdict and ordering a new trial. We remand this case to the circuit court for entry of an order reinstating the jury's verdict in favor of the defendants.

## I. Factual and Procedural Background

The plaintiff alleged that he was injured while constructing a mine portal canopy at defendant Frontier Coal Company's "Double Camp No.1"in Wyoming County, West Virginia. The injury occurred on February 10, 2008, as the plaintiff and six co-workers were building a mine portal canopy.[1] The plaintiff alleged that he was injured when a wall that was approximately five feet high and twenty-five feet long fell onto him. Following this incident, the plaintiff filed a deliberate intent action against the defendants.

The trial began on April 24, 2012. On the seventh and final day of the trial, the parties made their closing arguments and the court gave its instructions to the jury prior to the lunch recess. During the lunch recess, Lanny "Bruno" Cline, a trial representative of defendant Frontier Coal Company, was standing on the courthouse steps as Juror Number Six was returning to the courthouse. The two engaged in a brief conversation. One of the plaintiff's trial lawyers noticed the conversation and told Juror Number Six and Mr. Cline

---

[1]Mine portal canopies are placed at the outside entrance of underground coal mines to protect workers from falling material as they enter and exit the coal mine.

that such a conversation was improper while the trial was in progress. The plaintiff's lawyer informed the trial court about the conversation and the court held an *in camera* hearing. This hearing complied with the requirement this Court set forth in Syllabus Point 2 of *State v. Sutphin*, 195 W.Va. 551, 466 S.E.2d 402 (1995):

> In any case where there are allegations of any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about a matter pending before the jury not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial with full knowledge of the parties; it is the duty of the trial judge upon learning of the alleged communication, contact, or tampering, to conduct a hearing as soon as is practicable, with all parties present; a record made in order to fully consider any evidence of influence or prejudice; and thereafter to make findings and conclusions as to whether such communication, contact, or tampering was prejudicial to the defendant to the extent that he has not received a fair trial.

Mr. Cline was the first to testify at the hearing. Mr. Cline stated that he knew he was not supposed to talk to a juror about anything "pertaining to the case," and said "I wasn't talking to him about the case. I didn't know I couldn't speak to people." When asked who initiated the conversation and what was said during the exchange, Mr. Cline stated:

> He [Juror Number Six] was rubbing his head and he went, "Shooo." I said, "It's too hot to be in the courthouse, ain't it?" And he said, "Yes, I hope to go back to work tomorrow." I said, "Where do you work?" He said, "I work at Wal-Mart.". . . He said, "Yeah, I've had my red hat card for a while . . . but I've never found a job in the mines," is what he said. I said, "Well coal industry is bad right now." He said, "Well I'm gonna have to redo my card. I've done had to redo it once." And then Pam [plaintiff's trial counsel] come up.

Mr. Cline stated that the conversation was brief, lasting "[j]ust a couple of seconds."

3

Juror Number Six testified next. When asked to describe his conversation with Mr. Cline, Juror Number Six stated:

> Well I was just coming back in from lunch and he [Mr. Cline] was just standing out there and he just asked me where I worked, you know. I told him, "Wal-Mart." And I didn't think nothing of it. I mean I probably should have, yes. I said, "Well." And then I just asked him if he was in the coal mines and I told him I had my apprentice card. And he said, "Well, you know, it won't be, you know, long probably before you can get you a job and then ah . . . Pam come along and said, "You all can't be talking." Well we went on about our business and I come back inside. I said, "Yeah, it was a mistake on my part, you know, even saying something to him after he asked me where I worked."

Counsel for the plaintiff asked Juror Number Six if the conversation was "a discussion about you in any way going to work for him or anything like that?" Juror Number Six replied, "No sir, no." Juror Number Six testified that Mr. Cline initiated the conversation, stated that the conversation would not have any effect on how he would decide the case,[2] and stated that he did not discuss the conversation with any of the other jurors. Juror Number Six testified that the conversation was "casual" and "innocent."

After Mr. Cline and Juror Number Six testified, the plaintiff's lawyer moved to disqualify Juror Number Six and place an alternate juror on the jury. Counsel for the defendants opposed the motion, arguing that it was just a "casual" exchange. The trial court granted the plaintiff's motion, disqualified Juror Number Six and replaced him with the first

---

[2]Juror Number Six stated, "I'm going by the evidence. You know look over all of it and you know I'd make my choice to which case would win, which party would win the case."

4

alternate juror.[3]   The jury began its deliberations and thereafter returned a verdict for the defense.  The circuit court entered a final judgment order on May 3, 2012, adopting the jury's verdict.

On May 14, 2012, the plaintiff filed a motion asking the circuit court to set aside the verdict and to order a new trial based on the alleged improper contact between Mr. Cline and Juror Number Six.  The circuit court entered an order on September 28, 2012, granting the plaintiff's motion to set aside the verdict and ordering a new trial based on the improper juror contact.  The court's order explained that the conversation between Mr. Cline and Juror Number Six creates "the appearance of a jury tainted by prejudice."  The court's order noted that after Juror Number Six testified at the *in camera* hearing, he was returned to the jury room prior to being dismissed.  The court's order speculated that Juror Number Six *could have* discussed the conversation between himself and Mr. Cline with the other jurors after the *in camera* hearing prior to being dismissed.  The court's order states:

> At a minimum, the jury was aware that some sort of
> contact occurred to Juror # 6 and that the juror was being
> questioned and removed.  In addition, after the contact between

---

[3]During *voir dire* the plaintiff did not object to the first alternate juror or move to strike him from the jury for cause.  Instead, it was not until the *in camera* hearing on the last day of the trial that the plaintiff objected to the first alternate juror being seated and asked the trial judge to seat the second alternate juror. The plaintiff argued that the first alternate juror had worked in the coal mining industry and could be favorable to the defendants.  The trial judge denied the plaintiff's objection, stating that the parties had previously agreed that in the event an alternate juror was needed, the first alternate would be placed on the jury.  The court's ruling was proper under Rule 47© of the *West Virginia Rules of Civil Procedure* which states that alternate jurors shall replace jurors who are disqualified "in the order in which they are called[.]"

Juror # 6 and Mr. Cline, Juror # 6 and the jury had at least two hours to discuss the conversation and its effects. Therefore, this Court cannot ignore the appearance of prejudice created by the situation. . . .

The conflicting narratives offered to the Court leave it with no authoritative narrative from which to assign blame or infer prejudicial motive. What the Court is left with is a conversation which is in clear violation of both statute and precedent and an ample opportunity for the prejudicial effect of that conversation to compromise the remaining jurors who delivered the verdict in question.

After the circuit court entered this order, the defendants filed the present appeal.

## II. Standard of Review

The defendants contend that the circuit court erred when it granted the plaintiff's motion for a new trial. When reviewing a circuit court's decision on such a motion, we have held that:

Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence.

Syllabus Point 4, *Sanders v. Georgia-Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976). *Accord Tennant v. Marion Health Care Found., Inc.*, 194 W.Va. 97, 104, 459 S.E.2d 374, 381 (1995) ("We review the rulings of the circuit court concerning a new trial and its conclusions as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard.

6

Questions of law are subject to a *de novo* review.").  Further, in Syllabus Point 7 of *State v. Johnson*, 111 W.Va. 653, 164 S.E. 31 (1932), this Court held:

> A motion for a new trial on the ground of misconduct of a jury is addressed to the sound discretion of the court, which as a rule will not be disturbed on appeal where it appears that defendant was not injured by the misconduct or influence complained of.  The question as to whether or not a juror has been subjected to improper influence affecting the verdict is a fact primarily to be determined by the trial judge from the circumstances, which must be clear and convincing to require a new trial; proof of mere opportunity to influence the jury being insufficient.

We these standards in mind, we consider the parties' arguments.

### III.  Discussion

The defendants raise two main arguments in support of their position that the trial court erred by granting the plaintiff's motion for a new trial: (1) any prejudice created by the conversation between Juror Number Six and Mr. Cline was remedied when the court removed Juror Number Six before jury deliberations began; and (2) the plaintiff waived his right to request a new trial based on the alleged improper juror contact by not moving for a mistrial at the time the juror misconduct was discovered.  By contrast, the plaintiff contends that (1) the defendants failed to rebut the argument that prejudice was created by the conversation between Mr. Cline and Juror Number Six; and (2) he was not required to move for a mistrial at the time the juror misconduct was discovered.

7

This Court has held that "[m]isconduct of a juror, prejudicial to the complaining party, is sufficient reason to direct a mistrial or set aside a verdict rendered by the jury of which he is a member." Syllabus Point 3, *Legg v. Jones*, 126 W.Va. 757, 30 S.E.2d 76 (1944). In discussing the necessity of proving prejudice, the Court in *Legg* stated:

> Upon a clear and satisfactory showing of misconduct by a juror induced, or participated in, by an interested party, no proof is required that the misconduct resulted in prejudice to the complaining party. Prejudice is presumed and unless rebutted by proof the verdict will be set aside.

*Id.* at 763, 30 S.E.2d at 80. Based on the Court's holding in *Legg*, we begin our analysis with two inquires. First, did the conversation between Mr. Cline and Juror Number Six raise a presumption of prejudice? Second, if a presumption of prejudice was raised, did the defendants present evidence rebutting it?

Under *Legg*, prejudice is presumed when an interested party induces the misconduct of a juror. Mr. Cline, an interested party in the case, engaged in a conversation with Juror Number Six that is prohibited under Rule 4.09 of the *West Virginia Trial Court Rules*, which states, "No party, nor his agent or attorney, shall communicate or attempt to communicate with any member of the jury . . . until that juror has been excused from further service for a particular term of court[.]" Based on the violation of Rule 4.09 and the presumption of prejudice standard set forth in *Legg*, we find that the conversation between Mr. Cline and Juror Number Six was sufficient to raise a presumption of prejudice against the plaintiff.

Having found that a presumption of prejudice was raised, we next consider whether the defendants rebutted this presumption. The defendants state that any prejudice caused by the conversation between Juror Number Six and Mr. Cline was remedied by Juror Number Six being removed before jury deliberations began. Further, the defendants assert that, prior to the verdict, the plaintiff did not ask for a mistrial; he only moved for Juror Number Six to be removed and replaced with an alternate. The defendants contend that if the plaintiff thought that the conversation between Juror Number Six and Mr. Cline prejudiced the entire jury, he could have moved for a mistrial at the conclusion of the *in camera* hearing, rather than after the jury returned its verdict for the defendants. Finally, the defendants argue that the trial court erred because its post-trial ruling granting the plaintiff a new trial is based on its finding that prejudice *could have* occurred, rather than on evidence showing that prejudice actually *had* occurred.

The trial court conducted an immediate hearing upon learning of the conversation between Mr. Cline and Juror Number Six. After Mr. Cline and Juror Number Six testified at the *in camera* hearing, the circuit court granted the plaintiff's motion to disqualify Juror Number Six and replace him with an alternate juror. The plaintiff did not move for a mistrial. In *Legg*, this Court stated, "[A] party will not be permitted to remain silent hoping for a satisfactory verdict from the jury, and then complain when he is disappointed therein." 126 W.Va. at 765, 30 S.E.2d at 80. Similarly, this Court has stated:

> We disfavor the technique of not first making a timely objection
> to the error and instead waiting until a later time to move for a
> mistrial. Mistrials in civil cases are generally regarded as the

9

most drastic remedy and should be reserved for the most grievous error where prejudice cannot otherwise be removed.

*Pasquale v. Ohio Power Co.*, 187 W.Va. 292, 309, 418 S.E.2d 738, 755 (1992) (Internal citation omitted).

While the plaintiff objected to the conversation in the instant case, he did not move for a mistrial until after the jury returned a verdict in the defendants' favor. Under *Legg* and *Pasquale*, the plaintiff should have moved for a mistrial at the conclusion of the *in camera* hearing if he believed the brief exchange between Juror Number Six and Mr. Cline prejudiced the entire jury. The plaintiff did not make such a motion; instead, he asked the court to disqualify Juror Number Six and replace him with an alternate juror. The court granted the plaintiff's motion and the plaintiff received the relief he requested.

In granting the plaintiff's request to remove Juror Number Six, the trial court did not make a finding of misconduct. Rather, the court stated that it was disqualifying Juror Number Six "to eliminate all appearance for a possibility of impropriety." By contrast to the trial court's reluctance to make a finding of misconduct at the conclusion of the *in camera* hearing, the court's post-trial order states that the plaintiff was prejudiced because Juror Number Six *could have* informed the other jurors about his conversation with Mr. Cline. The court's order states that after the *in camera* hearing, Juror Number Six was returned to the jury room with the other jurors and

> had at least two hours to discuss the conversation and its effects . . . [and this presented] an ample opportunity for the prejudicial effect of that conversation to compromise the remaining jurors who delivered the verdict in question.

10

There was no objection by the plaintiff to Juror Number Six returning to the jury room after the *in camera* hearing. In addition, there is no evidence in the record that Juror Number Six discussed the conversation between himself and Mr. Cline with the other jurors. When asked if he discussed the conversation with the other jurors prior to the *in camera* hearing, Juror Number Six stated, "No, I ain't told none of them nothing." The trial court's conclusion that Juror Number Six may have compromised the other jurors following the *in camera* hearing was based solely on Juror Number Six being returned to the jury room and having the opportunity to speak with the other jurors before he was dismissed. The standard for granting a new trial based on juror misconduct is not met by a showing of mere opportunity to influence a jury. In Syllabus Point 7 of *State v. Johnson*, *supra*, this Court stated that the circumstances "must be clear and convincing to require a new trial; *proof of mere opportunity to influence the jury being insufficient*." (Emphasis added). We find no clear and convincing evidence that Juror Number Six compromised the other jurors upon being returned to the jury room prior to being dismissed.

To summarize, we find that the conversation between Mr. Cline and Juror Number Six raised a presumption of prejudice. Further, we find that the potential prejudice was remedied when the trial court granted the plaintiff's request to remove Juror Number Six and replace him with an alternate juror before jury deliberations began. Finally, we find that the circuit court abused its discretion when it granted the plaintiff's motion to set aside the jury's verdict and order a new trial. The speculative prejudice the trial court relied upon–that Juror Number Six *had the opportunity* to compromise the other jurors by telling them about

11

his conversation with Mr. Cline–does not meet the standard this Court set forth in *State v.*

*Johnson* to set aside a jury's verdict.[4]

---

[4]The plaintiff raised a cross-assignment of error, arguing that the circuit court erred by giving an intervening cause jury instruction submitted by the defendants. The jury instruction at issue stated:

> To satisfy the fifth element, Plaintiff must prove that Mr. Keneda's injury was the direct and proximate result of the specific unsafe working condition. Proximate cause is defined by the law as an act which, in the natural and continuous sequence of events, unbroken by any intervening cause, produces the injury, and without which the injury would not have occurred. The proximate cause of an injury is the last act contributing thereto, without which the injury would not have resulted.

We decline to address this assignment of error at length because this instruction only related to the fifth element of the deliberate intent statute. In order for a plaintiff to prevail in a deliberate intent claim, he/she must satisfy all five elements contained in *W.Va. Code §* 23-4-2(d)(2)(ii), which states:

> (ii) The trier of fact determines, either through specific findings of fact made by the court in a trial without a jury, or through special interrogatories to the jury in a jury trial, that all the following facts are proven:
> (A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;
> (B) That the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition;
> (C) That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the

(continued...)

12

## IV. Conclusion

The circuit court's September 28, 2012, order granting the plaintiff's motion to set aside the verdict and ordering a new trial based on the improper juror contact is reversed. We remand this case to the circuit court for entry of an order reinstating the jury's verdict in favor of the defendants.

Reversed and Remanded.

---

[4](...continued)
> employer, as demonstrated by competent evidence of written standards or guidelines which reflect a consensus safety standard in the industry or business, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;
>
> (D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C), inclusive, of this paragraph, the employer nevertheless intentionally thereafter exposed an employee to the specific unsafe working condition; and
>
> (E) That the employee exposed suffered serious compensable injury or death as defined in section one, article four, chapter twenty-three whether a claim for benefits under this chapter is filed or not as a direct and proximate result of the specific unsafe working condition.

The jury found that the plaintiff failed to establish four of the five elements contained in the statute. Thus, because the plaintiff did not satisfy elements (B), (C), or (D) of the statute, we find that any error resulting from a jury instruction that was only relevant to element (E) was harmless error.