# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2015 Term

FILED

October 7, 2015

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 14-0887

**STATE OF WEST VIRGINIA,**
**Plaintiff Below, Respondent**

**V.**

**LILLIE MAE TRAIL**
**Defendant Below, Petitioner**

---

Appeal from the Circuit Court of Lincoln County
Honorable Jay M. Hoke, Judge
Criminal Action No. 97-F-28

**AFFIRMED**

---

Submitted: September 15, 2015
Filed: October 7, 2015

Jonathan R. Marshall               Patrick Morrisey, Attorney General
Maryl C. Sattler                   Shannon Frederick Kiser
Bailey & Glasser                   Assistant Attorney General
Charleston, West Virginia          Charleston, West Virginia
Attorneys for the Petitioner       Attorneys for the Respondent

**JUSTICE DAVIS delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.      "Misconduct of a juror, prejudicial to the complaining party, is sufficient reason to direct a mistrial or to set aside a verdict returned by the jury of which he is a member."  Syllabus point 3, *Legg v. Jones*, 126 W. Va. 757, 30 S.E.2d 76, 77 (1944).

2.      "In the absence of any evidence that an interested party induced juror misconduct, no jury verdict will be reversed on the ground of juror misconduct unless the defendant proves by clear and convincing evidence that the misconduct has prejudiced the defendant to the extent that the defendant has not received a fair trial."  Syllabus point 3, *State v. Sutphin*, 195 W. Va. 551, 466 S.E.2d 402 (1995).

3.      "The type of evidence that is admissible in the mercy phase of a bifurcated first degree murder proceeding is much broader than the evidence admissible for purposes of determining a defendant's guilt or innocence.  Admissible evidence necessarily encompasses evidence of the defendant's character, including evidence concerning the defendant's past, present and future, as well as evidence surrounding the nature of the crime committed by the defendant that warranted a jury finding the defendant guilty of first degree murder, so long as that evidence is found by the trial court to be relevant under Rule 401 of the West Virginia Rules of Evidence and not unduly prejudicial pursuant to Rule 403 of the

West Virginia Rules of Evidence." Syllabus point 7, *State v. McLaughlin*, 226 W. Va. 229, 700 S.E.2d 289 (2010).

4. Autopsy or crime scene photographs may be particularly relevant to depicting the nature of the crime committed by a defendant who has been found guilty of first degree murder. Even if deemed gruesome, the probative value of these photographs is greater at the mercy phase of a bifurcated trial than at the guilt phase of such trial.

5. "Although Rules 401 and 402 of the West Virginia Rules of Evidence strongly encourage admission of as much evidence as possible, Rule 403 of the West Virginia Rules of Evidence restricts this liberal policy by requiring a balancing of interests to determine whether logically relevant is legally relevant evidence. Specifically, Rule 403 provides that although relevant, evidence may nevertheless be excluded when the danger of unfair prejudice, confusion, or undue delay is disproportionate to the value of the evidence." Syllabus point 9, *State v. Derr*, 192 W. Va. 165, 168, 451 S.E.2d 731, 734 (1994).

6. "A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor

ii

of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled." Syllabus point 3, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

**Davis, Justice:**

In this criminal appeal, the petitioner herein and defendant below, Lillie Mae Trail ("Ms. Trail"), challenges her conviction by jury of murder in the first degree and her sentence of life without mercy.[1] Ms. Trail herein alleges the following errors: (1) jury misconduct; (2) application of erroneous evidentiary standard for admission of autopsy and crime scene photographs during mercy phase; (3) improper reading to jury of West Virginia Slayer Statute; (4) flawed use of theme of "atonement" during prosecutor's mercy phase closing argument; (5) unsupported statements made by prosecutor during closing argument; (6) wrongful admission into evidence of a summary chart; (7) insufficient evidence to support jury's verdict; and (8) cumulative error. Upon thorough review of these issues, the party's briefs, oral argument, and relevant law, we find no error and, therefore, affirm. On the issue pertaining to the proper evidentiary standard for the admission of autopsy and crime scene photographs during the mercy phase, we hold that, autopsy or crime scene photographs may be particularly relevant to depicting the nature of the crime committed by a defendant who has been found guilty of first degree murder. Even if deemed gruesome, the probative value of these photographs is greater at the mercy phase of a bifurcated trial than at the guilt phase of such trial.

---

[1]We note that Ms. Trail's present counsel is not the same counsel who filed Ms. Trail's appellate brief.

# I.

## FACTUAL AND PROCEDURAL HISTORY

On November 22, 1994, Ms. Trail's husband, Chester Trail, was hunting in the woods when he was shot multiple times and killed. Ms. Trail's subsequent trial commenced on October 6, 1997, in the Circuit Court of Lincoln County, and ended on October 27, 1997. During the course of the bifurcated trial, a jury first found Ms. Trail guilty of murder in the first degree at the close of the guilt phase.[2] In reaching its verdict, the jury found that Ms. Trail had hired her nephew, Gregory Whittington, to kill her husband so that she could collect on various policies of insurance.[3] At the close of the penalty phase of the bifurcated trial, the jury recommended no mercy. A sentencing hearing was held on December 9, 1997, after which, by order entered on April 7, 1998, the circuit court imposed a sentence of life without the possibility of parole. This sentence was ordered to run concurrently with a sentence that had been previously imposed by the Circuit Court of Kanawha County following Ms. Trail's plea of no contest to a charge of unlawful wounding.[4]

---

[2]At the close of the State's case-in-chief, the defendant moved for a judgment of acquittal. The motion was denied.

[3]Upon Ms. Trail's request, the jury was polled. Each juror affirmed the guilty verdict.

[4]The unlawful wounding charge arose from an incident where, at Ms. Trail's request, Gregory Whittington and his father, who also is Ms. Trail's brother, drugged, tied up, and beat Mark Medley with a claw hammer. Mark Medley was Ms. Trail's brother-in-law.

Thereafter, in August 1998, Ms. Trail filed her post-trial motion for acquittal or, in the alternative, for a new trial. The motion alleged juror misconduct and various trial errors. The circuit court held a hearing on the alleged jury misconduct, as required by Syllabus point 2 of *State v. Sutphin*, 195 W. Va. 551, 466 S.E.2d 402 (1995), on November 5, 1998. By summary order entered several years later, on June 8, 2006,[5] the circuit court denied both motions. The summary order was followed by a more detailed order, entered on January 8, 2007, containing more thorough findings of fact and conclusions of law pertaining to the circuit court's denial of Ms. Trail's post-trial motions. In that order, the circuit court noted that Ms. Trail's motion alleging jury misconduct, made under Rule 33 of the West Virginia Rules of Criminal Procedure, had not been timely filed. Nevertheless, the circuit court stated that its denial was based upon the merits of the motion.[6]

---

[5]The June 8, 2006, order stated that the circuit court

> was at this time entering a summary order, with a further order to follow with more particular findings of fact and conclusions of law, as a result of problems when the roof of the Lincoln County Courthouse leaked and caused extensive damages to the Judge's Chambers and the Court's records. Since that time, however, those problems have now been alleviated, thereby allowing this court to enter this summary order and the following more particular order. Thus, the Court is placing all parties hereto on notice that a further Post-Conviction Procedural Order shall follow.

[6]The circuit court's order states:

> [T]he Defendant's Motion for a New Trial was not timely under Rule 33 of the West Virginia Rules of Criminal Procedure. The

(continued...)

By subsequent order entered on July 15, 2014,[7] the circuit court granted Ms.

Trail's motion seeking resentencing in order to restart the appeal period to challenge her

conviction and sentence. This appeal followed.[8]

---

[6](...continued)
Motion for a new trial was filed in August of 1998, well past the ten (10) days allowed for filing a Motion for New Trial. However, the Defendant's attorney did file a Motion for Extension of Time to file certain items, including an Appeal; in response to which the Court noted that until this Order was issued, there would be no final order; . . .

. . . .

While this WVRCrP Rule 33 Motion was not timely filed, it was not the deciding factor as to why this Motion is DENIED. Given the gravity of the allegations and given the nature of the offense charge and the conviction returned by the trial jury, this Court proceeded in the interests of justice and held *Sutphin* hearing(s) to investigate and determine the Defendant's allegations of "juror misconduct", but found little or no evidence of "jury misconduct", and with such in no way approaching the "clear and convincing" evidence standard within the test set out in *Sutphin* . . . .

[7]The record does not adequately explain why Ms. Trail's appeal was not perfected for roughly eight years following the circuit court's entry of its final order denying her post trial motions and more than sixteen years following the entry of her initial sentencing order. Her motion for resentencing made in the circuit court merely refers to "delays associated with reappointing counsel." We note that Ms. Trail has not made this delay an issue or assignment of error. Therefore, any issue related to the delay has been waived. *State v. Lockhart*, 208 W. Va. 622, 627 n.4, 542 S.E.2d 443, 448 n.4 (2000) ("Assignments of error that are not briefed are deemed waived."); *Tiernan v. Charleston Area Med. Ctr., Inc.*, 203 W. Va. 135, 140 n.10, 506 S.E.2d 578, 583 n.10 (1998) ("Issues not raised on appeal or merely mentioned in passing are deemed waived." (citation omitted)).

[8]Additional facts pertaining to specific assignments of error will be set out in
(continued...)

4

## II.

## STANDARD OF REVIEW

Ms Trail's case is before this Court on appeal from an order denying her motion seeking a new trial or, in the alternative, a judgment of acquittal based upon the insufficiency of the evidence. This Court applies the following general standard when reviewing a circuit court decision denying a new trial:

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000). Additionally, we note that "[t]he Court applies a *de novo* standard of review to the denial of a motion for judgment of acquittal based upon the sufficiency of the evidence." *State v. Juntilla*, 227 W. Va. 492, 497, 711 S.E.2d 562, 567 (2011) (per curiam) (citing *State v. LaRock*, 196 W. Va. 294, 304, 470 S.E.2d 613, 623 (1996)). *Accord State v. Minigh*, 224 W. Va. 112, 124, 680 S.E.2d 127, 139 (2009) (per curiam).

With due regard for these general standards for our review, we will address the

---

[8](...continued)
our discussion of the errors to which they pertain.

issues raised by Ms. Trail. We will observe additional standards for our review of particular issues she has raised as necessary below.

# III.

# DISCUSSION

Ms. Trail herein raises numerous errors to challenge her conviction of murder in the first degree and her sentence of life without mercy. We will address in turn each of the errors she has raised.

## A. *Jury Misconduct*

Following the conclusion of the trial, Ms. Trail's lawyer received information that a juror, Teresa Nunley ("Juror Nunley"), may have discussed the case with a co-worker during the trial. On November 5, 1998, the circuit court conducted a *Remmer* hearing[9] to

---

[9]*See State v. Sutphin*, 195 W. Va. 551, 558, 466 S.E.2d 402, 409 (1995) ("A hearing (or hearings) conducted to determine whether or not any contact with a juror was prejudicial has now been informally named a *Remmer* hearing."). The term "*Remmer* hearing" originates from *Remmer v. United States*, 347 U.S. 227, 74 S. Ct. 450, 98 L. Ed. 654 (1954), wherein the United States Supreme Court "addressed the obligation of a trial court who learns, directly or indirectly, that a juror has been contacted during a trial." *Sutphin*, 195 W. Va. 551, 557, 466 S.E.2d 402, 408.

This Court requires such a hearing in response to allegations of juror misconduct:

> In any case where there are allegations of any private
> communication, contact, or tampering, directly or indirectly,

(continued...)

6

consider evidence of the misconduct and to ascertain what, if any, prejudice resulted therefrom.

During the *Remmer* hearing, Linda Shamblin ("Ms. Shamblin"), the co-worker with whom Juror Nunley allegedly had engaged in an improper communication, testified that her daughter previously had been married to Ms. Trail's son. Through Ms. Shamblin's testimony, it became apparent that Ms. Shamblin and Ms. Trail did not have a friendly relationship. It also was revealed that Ms. Shamblin did not personally know Juror Nunley and had no authority over Juror Nunley at their place of employment. Ms. Shamblin testified that she had heard Juror Nunley was sitting on Ms. Trail's jury. According to Ms. Shamblin, one morning while the trial was ongoing she encountered Juror Nunley in their workplace break room and inquired "[a]re you on [Ms. Trail's] trial?" Ms. Shamblin testified that Juror

---

[9](...continued)
with a juror during a trial about a matter pending before the jury not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial with full knowledge of the parties; it is the duty of the trial judge upon learning of the alleged communication, contact, or tampering, to conduct a hearing as soon as is practicable, with all parties present; a record made in order to fully consider any evidence of influence or prejudice; and thereafter to make findings and conclusions as to whether such communication, contact, or tampering was prejudicial to the defendant to the extent that he has not received a fair trial.

Syl. pt. 2, *id.*

7

Nunley responded that she was "not allowed to discuss that," and the conversation ended.

Juror Nunley's testimony differed from Ms. Shamblin's. According to Juror Nunley, Ms. Shamblin approached her in the break room and asked if she was serving on Ms. Trail's jury. Upon receiving an affirmative answer, Ms. Shamblin went on to comment "Oh, I know she is guilty," along with other similar, yet brief, comments. Juror Nunley stated that she promptly left the break room. On the issue of influence, Juror Nunley testified that, although she felt Ms. Shamblin was attempting to sway her, Ms. Shamblin's comments had no influence on the verdict she rendered in the case. Juror Nunley pointed out that the two women had one solitary encounter about the trial and that encounter lasted only a few seconds. She also testified that she did not tell any other jurors about the comments Ms. Shamblin made to her.

The third and final person to testify at the *Remmer* hearing was Misty Holtzman ("Ms. Holtzman), another of Juror Nunley's co-workers. Ms. Holtzman, who is a friend of the defendant, Ms. Trail, worked alongside Juror Nunley at their place of employment. She testified that Juror Nunley told her of the encounter with Ms. Shamblin. According to Ms. Holtzman's testimony, Juror Nunley described the encounter as being initiated when Juror Nunley approached Ms. Shamblin and inquired about her knowledge of Ms. Trail. The version of the encounter related by Ms. Holtzman was that Ms. Shamblin

informed Juror Nunley of the history of problems between Ms. Shamblin's daughter and Ms. Trail's son, and that Ms. Shamblin encouraged Juror Nunley to "say that [Ms. Trail] is guilty because she was guilty as sin." Ms. Holtzman testified to her belief that Juror Nunley had been influenced by the conversation with Ms. Shamblin based upon Ms. Holtzman's observations of Juror Nunley's facial expressions as she described the encounter.

Following the *Remmer* hearing, by order entered on January 8, 2007, the circuit court found insufficient evidence of juror misconduct to warrant granting a new trial on this basis. On appeal, Ms. Trail contends that the circuit court erred by placing the burden of proof upon her to establish juror misconduct without first determining whether the source of the improper juror contact was an "interested party." The State responds that the circuit court properly applied the standards set out by this Court in *Sutphin*, 195 W. Va. 551, 466 S.E.2d 402.

At the outset, we note that our review of this issue is for an abuse of discretion:

> "A motion for a new trial on the ground of the misconduct of a jury is addressed to the sound discretion of the court, which as a rule will not be disturbed on appeal where it appears that defendant was not injured by the misconduct or influence complained of. The question as to whether or not a juror has been subjected to improper influence affecting the verdict, is a fact primarily to be determined by the trial judge from the circumstances, which must be clear and convincing to require a new trial, proof of mere opportunity to influence the jury being insufficient." Syllabus Point 7, *State v. Johnson*, 111

9

W. Va. 653, 164 S.E. 31 (1932).

Syl. pt. 1, *Sutphin*, 195 W. Va. 551, 466 S.E.2d 402. This Court is mindful that juror misconduct is an issue not to be taken lightly.

> Any challenge to the lack of the impartiality of a jury assaults the very heart of due process. *Irvin v. Dowd*, 366 U.S. 717, 721-722, 81 S. Ct. 1639, 1642, 6 L. Ed. 2d 751, 755 (1961). "The inevitable result of misconduct on the part of a juror is to cast suspicion on the impartiality of the verdict rendered by a jury of which he is a member." *Legg v. Jones*, 126 W. Va. 757, 763, 30 S.E.2d 76, 79 (1944).

*Sutphin*, 195 W. Va. at 557, 466 S.E.2d at 408. Nevertheless, the mere allegation of juror misconduct is insufficient to warrant a new trial. First, their must be proof that some improper event has occurred. "Misconduct on the part of the jury as grounds for a new trial is not presumed but must be fully proved by the moving party." 58 Am. Jr. 2d *New Trial* § 143, at 195 (2012) (footnote omitted). When misconduct is established, a new trial is warranted where prejudice is established. "Misconduct of a juror, *prejudicial to the complaining party*, is sufficient reason to direct a mistrial or to set aside a verdict returned by the jury of which he is a member." Syl. pt. 3, *Legg v. Jones*, 126 W. Va. 757, 30 S.E.2d 76 (1944) (emphasis added).

There is no dispute that a communication about Ms. Trail was had between Juror Nunley and Ms. Shamblin during the course of the trial. The issue raised by Ms. Trail is whether the circuit court erred in failing to find Ms. Shamblin was an "interested party"

10

to Ms. Trail's criminal action such that Ms. Trail was entitled to a presumption of prejudice:

> Upon a clear and satisfactory showing of misconduct by a juror induced, or participated in, by an *interested party*, no proof is required that the misconduct resulted in prejudice to the complaining party. Prejudice is presumed and unless rebutted by proof the verdict will be set aside. *Flesher v. Hale*, 22 W. Va. 44 [(1883), *overruled on other grounds by Proudfoot v. Dan's Marine Serv., Inc.*, 210 W. Va. 498, 558 S.E.2d 298 (2001)]. But where such misconduct is induced by *a stranger, or a person having no interest in the litigation*, unless manifestly prejudicial, the effect thereof must be established by proof.

*Legg v. Jones*, 126 W .Va. 757, 763-64, 30 S.E.2d 76, 80 (emphasis added). *See also Bluestone Indus., Inc. v. Keneda*, 232 W. Va. 139, 143, 751 S.E.2d 25, 29 (2013) (per curiam) ("Based on the Court's holding in *Legg*, we begin our analysis with two inquires. First, did the conversation between Mr. Cline and Juror Number Six raise a presumption of prejudice? Second, if a presumption of prejudice was raised, did the defendants present evidence rebutting it?"). In other words,

> [i]n order to determine whether the trial judge abused his discretion, we first need to examine whether the misconduct was induced by a third-party stranger having no interest in the litigation, or whether a juror was induced to participate in an act of misconduct by an interested party. This analysis is necessary in order to determine whether prejudice is presumed, as in the latter factual construct (and unless rebutted by proof, the verdict will be set aside), or whether the misconduct was induced by a stranger or person having no interest in the litigation, thus requiring proof of manifest prejudice by clear and convincing evidence. *Legg v. Jones*, 126 W. Va. 757, 30 S.E.2d 76 (1944); *See also State v. Daniel*, 182 W. Va. 643, 391 S.E.2d 90 (1990).

*Sutphin*, 195 W. Va. at 557, 466 S.E.2d at 408. The circuit court implicitly concluded that

Ms. Shamblin was a stranger to the proceedings and placed the burden of establishing prejudice on Ms. Trail. Under the facts presented in this case, we find no error.

Ms. Trail argues that Ms. Shamblin is an "interested party" by virtue of her history with Ms. Trail, *i.e.*, the fact that Ms. Shamblin's daughter previously had been married to Ms. Trail's son and Ms. Shamblin's "ill will"[10] toward Ms. Trail. Although this Court has not provided an express definition of an "interested party" in the context of juror misconduct, our past cases clearly require a more direct connection to the litigants involved in the trial affected by the alleged misconduct than exists in this instance.

For example, in *Sutphin* the Court concluded that misconduct had been induced

---

[10]According to a portion of the record relied upon by Ms. Trail to establish this "ill will," Ms. Shamblin testified as follows:

> Q.     And is it fair to say that there has been some bad blood between you and the Trail family over your daughter?
>
> A.     Somewhat, years ago.
>
> Q.     Well, you still hold - - I mean, we spoke last night. You still hold some hard feelings about it?
>
> A.     I don't know if you call it hard feelings or not. I told you I just didn't approve of the things she did.

Other testimony cited by Ms. Trail similarly included statements about Ms. Shamblin's past feelings about Ms. Trail resulting from the relationship between their children.

by a *stranger* where the juror's contact with the defendant's cousin "was not procured by the State or by the Defendant." 195 W. Va. at 559-60, 466 S.E.2d at 410-11 (emphasis added).[11]

Similarly, the following discussion in *Legg v. Jones* demonstrates that the Court considered an "interested party" to be the plaintiff, the defendant, or an attorney representing one of them:

> Misconduct of jurors in drinking liquor with an interested party [(the plaintiff)] at a saloon has been emphatically condemned. *Pickens v. Coal River Boom & Timber Company*, 58 W. Va. 11, 18, 50 S.E. 872, 6 Ann. Cas. 285 [(1905)]. Transportation of a juror between his home and the county seat by an interested attorney [(one of the plaintiffs' attorneys)] during a trial is the basis of an admonition to attorneys and jurors to refrain from such conduct. *Mullens v. Lilly*, 123 W. Va. 182, 13 S.E.2d 634 [(1941)]. If an *interested attorney or a party to pending litigation* furnishes food and lodging to a juror who, at the time thereof, is engaged in the trial of an action in which the attorney or the party is interested, both are guilty of misconduct, and a favorable verdict should not be received or sustained. 39 Am. Jur., Title New Trial, Section 97; 55 A.L.R. 756, note. *See Griffin v. Tomlinson*, 155 Va. 150, 154 S.E. 483 [(1930)], wherein the rule stated above is applied to the report of commissioners in a condemnation proceeding.

*Legg*, 126 W. Va. 757, 763, 30 S.E.2d 76, 79-80 (emphasis added). *See also Bluestone Indus., Inc.*, 232 W. Va. 139, 143, 751 S.E.2d 25, 29 (indicating trial representative of corporate defendant was an interested party)*; Haight v. Goin*, 176 W. Va. 562, 564, 346

---

[11]The juror in *Sutphin* was acquainted with the defendant's cousin and engaged in a two- to three-hour visit with the cousin during the course of the trial and prior to the trial court's charge to the jury, closing arguments, and jury deliberation. *Sutphin*, 195 W. Va. 551, 466 S.E.2d 402.

S.E.2d 353, 355 (1986) ("In *Legg*[, 126 W. Va. 757, 30 S.E.2d 76], we discussed the necessity of proving prejudice where the alleged misconduct does not involve *a party*." (emphasis added))*; Griffin v. Tomlinson*, 155 Va. 150, 153-54, 154 S.E. 483, 484 (1930) ("[A]lmost all of the courts and text writers are agreed that for reasons of public policy the verdict rendered by a jury, any of whose members has been treated or entertained *by one having an interest in the litigation*, must be set aside.  The same rule applies to the acts of agents or attorneys of the parties litigant." (emphasis added)).  Likewise, the West Virginia Trial Court Rules expressly prohibit a party to litigation, or the agent or attorney for a party, from communicating with a member of the jury.  *See* W. Va. T.C.R. 4.09 ("No *party*, nor his *agent or attorney*, shall communicate or attempt to communicate with any member of the jury . . . until that juror has been excused from further service for a particular term of court[.]" (emphasis added)).

In this case, Ms. Shamblin clearly was not a party to Ms. Trail's litigation, or acting as an agent or representative of a party.  Rather than being an interested *party*, Ms. Shamblin simply was a member of the general public who appeared to be interested in the proceedings.  This Court previously has found that a person's concern for a defendant does not make them an "interested party" to the litigation.  In *State v. Daniel*, 182 W. Va. 643, 391 S.E.2d 90 (1990), a juror was contacted by a businesswoman, Betty Kelly, and encouraged to do what she could to help the defendant.  Ms. Kelly was in the used car business and

14

implied that she would give the juror's son a break on a used car. The Court found Ms. Kelly

was *not* an interested party, commenting that, "[i]n the case now before us, Betty Kelly had

no interest in the trial apart from her apparent concern for the appellant. No evidence was

presented that the appellant induced her to act in his behalf . . ." *Daniel*, 182 W. Va. at 647,

391 S.E.2d at 94. In the case *sub judice*, Ms. Shamblin's interest differed from that

addressed in *Daniel* insofar as it appears to have been negative to, rather than in favor of, the

defendant. Nevertheless, such a concern does not elevate her status to that of an "interested

party." Therefore, her communication with Ms. Nunley created no presumption of prejudice

that the state was required to overcome.

> In the absence of any evidence that an interested party induced juror misconduct, no jury verdict will be reversed on the ground of juror misconduct unless the defendant proves by clear and convincing evidence that the misconduct has prejudiced the defendant to the extent that the defendant has not received a fair trial.

Syl. pt. 3, *Sutphin,* 195 W. Va. 551, 466 S.E.2d 402. *See generally* 58 Am. Jr. 2d *New Trial*

§ 216, at 255 (2012) ("[I]n both civil and criminal cases, a new trial generally will not be

granted because of a conversation between a juror and a stranger when it does not appear that

such conversation was prompted by a party or that any injustice or prejudice resulted to the

complaining party. A new trial will be granted only where a conversation between a third

person and a juror is of such a character as is calculated to impress the case upon the mind

of the juror in a different aspect than was presented by the evidence in the courtroom or is

of such a nature as is calculated to result in harm to a party on trial." (footnote omitted)).

15

Indeed, the United States Supreme Court has observed that,

> due process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable. The safeguards of juror impartiality, such as voir dire and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen. Such determinations may properly be made at a hearing like that ordered in *Remmer* and held in this case.

*Smith v. Phillips*, 455 U.S. 209, 217, 102 S. Ct. 940, 946, 71 L. Ed. 2d 78 (1982).

In the instant case the trial court properly conducted a *Remmer* hearing and evaluated the evidence presented by Ms. Trail. Having the advantage of observing the witnesses and making appropriate credibility determinations,[12] the circuit court concluded that Ms. Trail failed to establish she had been prejudiced to the extent that she did not receive a fair trial. *See* Syl. pt. 3, *Sutphin,* 195 W. Va. 551, 466 S.E.2d 402. Under these circumstances, we find no abuse of discretion.[13]

---

[12]"Credibility determinations are properly made by the trier of fact, . . . who has had the opportunity to observe, first hand, the demeanor of the witness." *Miller v. Chenoweth*, 229 W. Va. 114, 121, 727 S.E.2d 658, 665 (2012) (per curiam). *See also State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995) ("An appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact.").

[13]The day prior to oral argument of this matter, counsel for Ms. Trail submitted
(continued...)

### B. Mercy Phase Evidentiary Standard for
### Autopsy and Crime Scene Photographs

Ms. Trail next argues that the trial court erred by allowing autopsy and crime

---

[13](...continued)
to this Court the case of *Barnes v. Joyner*, 751 F.3d 229, 241 (4th Cir. 2014), *cert. denied*, 135 S. Ct. 2643 (2015). This submission was purportedly made pursuant to Rule 10(I) of the West Virginia Rules of Appellate Procedure. Rule 10(I) allows a party to present authorities to this Court that "were not available in time to have been included in the party's brief." Insofar as the *Barnes* opinion was issued on May 5, 2014, and the deadline for perfecting this appeal was not until November 18, 2014, *Barnes* was available in time to have been included in Ms. Trail's brief and was not proper for submission under Rule 10(I). See *supra* note 1 for a comment related to a change in counsel of record for Ms. Trail.

Likewise, at oral argument, counsel for Ms. Trail urged this Court to adopt a presumption of prejudice deriving from *Barnes* that must be overcome by the government upon "'any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury.'" We decline Ms. Trail's invitation for several reasons. First, unlike the present case where the trial court conducted a proper *Remmer* hearing, the issue in *Barnes* was the lower court's failure to conduct a *Remmer* hearing after being apprised of alleged juror misconduct. Second, the presumption addressed in *Barnes* is not settled law. The *Barnes* court observed that,

> [w]ith respect to the presumption of prejudice, we have recently observed, "there is a split among the circuits regarding whether the *Remmer* presumption has survived intact following" the Supreme Court's decisions in *Smith v. Phillips*, 455 U.S. 209, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982), and *United States v. Olano*, 507 U.S. 725, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993). *United States v. Lawson*, 677 F.3d 629, 642 (4th Cir. 2012); *see also id.* at 643–44 (describing the circuit split).

751 F.3d at 242. Finally, this Court previously has itself interpreted *Remmer* and, based upon that interpretation, has adopted a procedure to protect a defendant's right to an impartial jury. *See Sutphin*, 195 W. Va. 551, 466 S.E.2d 402, discussed *supra* at note 9. As set out in our discussion above, the circuit court is this case followed *Sutphin* and held a proper hearing to address the juror misconduct alleged by Ms. Trail.

scene photographs to be admitted during the mercy phase of her trial.[14]  Ms. Trail contends

that the photographs were non-probative and unfairly prejudicial under Rules 401 and 403

of the West Virginia Rules of Evidence.  According to Ms. Trail, bifurcation does not permit

the circuit court to relax  admissibility requirements during the mercy phase of trial to admit

evidence that had been found to be inadmissible during the guilt phase.[15]  The State responds

[14]We wish to make clear that Ms. Trail has not argued to this Court that the photographs should have been excluded from the mercy phase proceeding because they were gruesome.  Instead, Ms. Trail has argued only that it was error for the trial court to apply a relaxed evidentiary standard during the mercy phase and to admit pictures that had been excluded during the guilt phase of her trial.  Additionally, we note that Ms. Trail is unable to identify for this Court the precise photographs that were presented to the jury during the mercy phase of her trial.  In her brief, Ms. Trail's attorney explains that

> [t]he undersigned counsel reviewed the official Court file located in the Lincoln County Circuit Clerk's Office. Unfortunately, the crime scene photographs were missing from the Court file.  However, the undersigned was able to locate the crime scene photographs, in the file maintained by Petitioner's trial counsel, Timothy Koontz.  The photographs were contained in an envelope labeled "crime scene."  As such, Petitioner believes that A.R. Vol 13, 90-120 are the official crime scene photographs that should have been in the Court file.

Based upon the record submitted on appeal, it appears that five photographs were admitted during the mercy phase of trial, two autopsy photos of the victim and three photos depicting the victim at the crime scene.  The photographs referenced in Ms. Trails brief, identified as being located in Vol. 13 of the appellate record at pages 90-120, are thirty images of the crime scene.  Chester Trail, the victim, is portrayed in ten of those thirty crime-scene images. The parties to this appeal do not identify which of the thirty crime scene photographs were actually published to the jury.  The appellate record also includes only one autopsy photograph of the victim, while two such photos were apparently published to the jury.

[15]Ms. Trail additionally asserts, without supporting argument or citation to legal authority, that the circuit court's admission of the challenged photographs violated her due

(continued...)

18

that the circuit court applied the correct evidentiary standard and found the photographs to have a higher probative evidentiary value in the mercy phase of the trial. Our review of this issue is for an abuse of discretion. "A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998).

The admissibility of gruesome photographs previously has been addressed by this Court in *State v. Derr*, 192 W. Va. 165, 168, 451 S.E.2d 731, 734 (1994). The *Derr* Court explained that "[t]he admissibility of photographs over a gruesome objection must be determined on a case-by-case basis pursuant to Rules 401 through 403 of the West Virginia Rules of Evidence." Syl. pt. 8, *id.* Moreover,

> Rule 401 of the West Virginia Rules of Evidence requires the trial court to determine the relevancy of the exhibit on the basis of whether the photograph is probative as to a fact of consequence in the case. The trial court then must consider

_____

[15](...continued)
process and equal protection rights. Because this issue was not developed, we find the issue was not adequately briefed and we deem the matter waived. *See State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("Although we liberally construe briefs in determining issues presented for review, issues which are . . . mentioned only in passing but are not supported with pertinent authority . . . are not considered[.]"); *State v. Lilly*, 194 W. Va. 595, 605 n.16, 461 S.E.2d 101, 111 n.16 (1995) ("[C]asual mention of an issue in a brief is cursory treatment insufficient to preserve the issue on appeal."); *State Dep't of Health & Human Res. v. Robert Morris N.*, 195 W. Va. 759, 765, 466 S.E.2d 827, 833 (1995) ("'A skeletal "argument," really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs.'" (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991)).

19

whether the probative value of the exhibit is substantially outweighed by the counterfactors listed in Rule 403 of the West Virginia Rules of Evidence. As to the balancing under Rule 403, the trial court enjoys broad discretion. The Rule 403 balancing test is essentially a matter of trial conduct, and the trial court's discretion will not be overturned absent a showing of clear abuse.

Syl. pt. 10, *Derr*, 192 W. Va. 165, 451 S.E.2d 731.

The trial in *Derr* does not appear to have been bifurcated, thus the standards for the admission of gruesome photographs announced therein would apply to the guilt phase of a prosecution. The instant case is one of first impression in asking this Court to determine whether the same high standard announced in *Derr* applies also to the admission of gruesome photographs during the mercy phase of a bifurcated trial.[16] The type of evidence admissible in the mercy phase of a bifurcated trial was set out in Syllabus point 7 of *State v. McLaughlin*, 226 W. Va. 229, 700 S.E.2d 289 (2010), wherein this Court held:

---

[16]In *State v. Rygh*, 206 W. Va. 295, 524 S.E.2d 447 (1999), we declined to address this issue because it was not properly before the Court. *See Rygh*, 206 W. Va. at 297 n.2, 524 S.E.2d at 449 n.2 ("During the mercy phase of the appellant's trial, the prosecution also introduced gruesome photos of the victims–also apparently without a substantive objection by appellant's counsel. *State v. Derr*, 192 W. Va. 165, 178-79, 451 S.E.2d 731, 744-45 (1994) reiterated this Court's awareness of the potential for 'hideous, ghastly, horrible, or dreadful' photographs to 'arouse passion and cause the jury to [act] on improper grounds,' a concern that is applicable to both phases of a bifurcated murder trial. . . . However, in the instant case we do not address the issue of the admissibility of the victims' photographs, as it is not before us."). See *supra* note 14 for an explanation of why we do not address whether or not the photographs admitted in the case *sub judice* were unduly gruesome.

20

The type of evidence that is admissible in the mercy phase of a bifurcated first degree murder proceeding *is much broader* than the evidence admissible for purposes of determining a defendant's guilt or innocence. Admissible evidence necessarily encompasses evidence of the defendant's character, including evidence concerning the defendant's past, present and future, as well as evidence surrounding *the nature of the crime committed* by the defendant that warranted a jury finding the defendant guilty of first degree murder, so long as that evidence is found by the trial court to be relevant under Rule 401 of the West Virginia Rules of Evidence and not unduly prejudicial pursuant to Rule 403 of the West Virginia Rules of Evidence.

(Emphasis added).

While *Derr* and *McLaughlin* both are clear that the proper analysis for determining the admissibility of gruesome photographs involves an evaluation under Rules 401 and 403, *McLaughlin* additionally establishes that "[t]he type of evidence that is admissible in the mercy phase of a bifurcated first degree murder proceeding *is much broader* than the evidence admissible for purposes of determining a defendant's guilt or innocence." Syl. pt. 7, in part, *McLaughlin*, 226 W. Va. 229, 700 S.E.2d 289 (emphasis added).[17] What this means is that the probative value of evidence is greater at the mercy

---

[17]We additionally point out that the mercy phase of a bifurcated trial is a sentencing proceeding. Rule 1101(b) of the West Virginia Rules of Evidence expressly states that, unless otherwise provided by rule of this Court, the Rules of Evidence do not apply to sentencing proceedings:

> *Rules Inapplicable.* Unless otherwise provided by rules
>
> (continued...)

stage than at the guilt phase, because the relevant issues are broader.  As the *McLaughlin*

Court observed, during the mercy phase "[a]dmissible evidence necessarily encompasses

evidence of the defendant's character, including evidence concerning the defendant's past,

present and future, as well as evidence surrounding the nature of the crime committed by the

defendant."  Syl. pt. 7, in part, *McLaughlin*, 226 W. Va. 229, 700 S.E.2d 289.  Indeed, the

issue during the mercy phase of a bifurcated trial is whether or not the defendant, who

already has been found guilty of murder in the first degree, should be afforded mercy, *i.e.*,

afforded the opportunity to be considered for parole after serving no less than fifteen years

of his or her life sentence.[18]  In her dissenting opinion in *Schofield v. West Virginia*

---

[17](...continued)
of the Supreme Court of Appeals, these rules other than those with respect to privileges do not apply in the following situations:

. . . . .

(3) Miscellaneous Proceedings.  *Sentencing*; granting or revoking probation or supervised release; issuance of warrants for arrest, criminal summonses and search warrants; and proceedings with respect to release on bail or otherwise.

W. Va. R. Evid. 1101(b).  Thus, the Rules of Evidence apply to the mercy phase of a bifurcated trial only as provided by this Court.  Based upon this Court's holding in Syllabus point 7 of *State v. McLaughlin*, 226 W. Va. 229, 700 S.E.2d 289 (2010), along with the application of Rule 1101(b), it is clear that only Rules 401 and 403 apply to evidentiary rulings made during the mercy phase of a bifurcated trial.  Rule 1101 was amended in 2014; however, that amendment was primarily stylistic and made no substantive change relevant to manner in which we herein apply the rule.

[18]*See* W. Va. Code § 62-3-15 (1994) (Repl. Vol. 2014).

*Department of Corrections*, 185 W. Va. 199, 207, 406 S.E.2d 425, 433 (1991), Justice Workman pointed out that "[t]he determination of whether a defendant should receive mercy is so crucially important that justice for both the state and defendant would be best served by a full presentation of all relevant circumstances without regard to strategy during trial on the merits." Particularly relevant in the context of gruesome photographs is their depiction of the nature of the crime committed. Accordingly, we now expressly hold that, autopsy or crime scene photographs may be particularly relevant to depicting the nature of the crime committed by a defendant who has been found guilty of first degree murder. Even if deemed gruesome, the probative value of these photographs is greater at the mercy phase of a bifurcated trial than at the guilt phase of such trial.

In ruling to admit the offered photographs into evidence during the mercy phase of the case *sub judice*, the circuit court explained that, "while I didn't allow the autopsy photos or any other crime scene photos in, on the issue of guilt or no guilt, I believe that they are relevant, and that there [sic] probative value outweighs the prejudicial impact they would have on the issue of mercy or no mercy." We find no abuse of discretion in the circuit court's ruling.[19]

---

[19]We note that the *Derr* Court also clarified that,

> [a]lthough Rule[] 401 . . . of the West Virginia Rules of Evidence strongly encourage[s] the admission of as much

(continued...)

### C. *Slayer Statute*

The West Virginia Slayer Statute is found at W. Va. Code § 42-4-2 (1931) (Repl. Vol. 2014). The statute prohibits a person who has been convicted of a felonious killing, or of conspiracy in the killing of another, from receiving funds or property from the victim:

> No person who has been convicted of feloniously killing another, or of conspiracy in the killing of another, shall take or acquire any money or property, real or personal, or interest therein, from the one killed or conspired against, either by descent and distribution, or by will, or by any policy or certificate of insurance, or otherwise; but the money or the property to which the person so convicted would otherwise have been entitled shall go to the person or persons who would have taken the same if the person so convicted had been dead at the date of the death of the one killed or conspired against, unless by some rule of law or equity the money or the property would pass to some other person or persons.

W. Va. Code § 42-4-2. Upon motion of the State, and over Ms. Trail's objection, the circuit

---

[19](...continued)
evidence as possible, Rule 403 of the West Virginia Rules of Evidence restricts this liberal policy by requiring a balancing of interests to determine whether logically relevant is legally relevant evidence. Specifically, Rule 403 provides that although relevant, evidence may nevertheless be excluded when the danger of unfair prejudice, confusion, or undue delay is disproportionate to the value of the evidence.

Syl. pt. 9, *Derr*, 192 W. Va. 165, 451 S.E.2d 731. As noted previously, we are unable to review the circuit court's ruling as to the prejudicial effect of the gruesome photographs insofar as Ms. Trail is unable to identify for this Court the precise photographs that were presented to the jury during the mercy phase of her trial. See *supra* note 14.

court took judicial notice of the statute and read its full text to the jury during the guilt phase of the trial.

Ms. Trail argues that the circuit court erred by reading the "Slayer Statute" to the jury. She contends that reading the statute resulted in unfair prejudice to her insofar as the statute was irrelevant, misleading, and created confusion. This is so, she argues, because the statute was read when she had not yet been convicted of the murder of her husband, and because the statute is relevant only in a civil proceeding resulting from the attempt of one convicted of murder to obtain funds or property, including insurance proceeds, from the victim. Accordingly, Ms. Trail contends that, under a proper application of Rules 401 and 403 of the West Virginia Rules of Evidence, the statute should not have been read to the jury. The State responds that the circuit court correctly read the Slayer Statute because Ms. Trail repeatedly had implied her innocence based upon her willingness to forego insurance proceeds. The State contends that counsel for Ms. Trail, on several occasions during the trial, made known to the jury that she was not receiving any proceeds from the policies that insured her husband's life.[20] We agree with the State.

---

[20]The State also asserts that similar comments where made during defense counsel's opening statement. The State fails to provide this Court with citations to the record where these comments are located. We reviewed defense counsel's entire opening statement and found no reference to Ms. Trail declining insurance proceeds. We admonish counsel to, in the future, carefully comply with Rule 10(d) of the West Virginia Rules of Appellate Procedure by providing "appropriate and specific citations to the record." W. Va. R. App. P.

(continued...)

This issue challenges the circuit court's admission of evidence; therefore, our review is for an abuse of discretion. "The West Virginia Rules of Evidence . . . allocate significant discretion to the trial court in making evidentiary . . . rulings. Thus, rulings on the admissibility of evidence . . . are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary . . . rulings of the circuit court under an abuse of discretion standard." Syl. pt. 1, *McDougal v. McCammon*, 193 W. Va. 229, 455 S.E.2d 788 (1995).

It is well established that,

> [t]o be admissible, evidence must first be relevant. W. Va. R. Evid. 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." W. Va. R. Evid. 401.

*State v. Wade*, 200 W. Va. 637, 652, 490 S.E.2d 724, 739 (1997). In discussing Rule 401, this Court has elaborated that,

> [u]nder Rule 401, evidence having any probative value whatsoever can satisfy the relevancy definition. Obviously, this is a liberal standard favoring a broad policy of admissibility. For example, the offered evidence does not have to make the existence of a fact to be proved more probable than not or provide a sufficient basis for sending the issue to the jury.

---

[20](...continued)
10(d).

*McDougal v. McCammon*, 193 W. Va. 229, 236, 455 S.E.2d 788, 795. Finally, this Court

has clarified that,

> "[a]lthough Rules 401 and 402 of the West Virginia
> Rules of Evidence strongly encourage admission of as much
> evidence as possible, Rule 403 of the West Virginia Rules of
> Evidence restricts this liberal policy by requiring a balancing of
> interests to determine whether logically relevant is legally
> relevant evidence. Specifically, Rule 403 provides that although
> relevant, evidence may nevertheless be excluded when the
> danger of unfair prejudice, confusion, or undue delay is
> disproportionate to the value of the evidence."

Syl. pt. 9, *State v. Derr*, 192 W. Va. 165, 451 S.E.2d 731.

A significant portion of the State's case-in-chief was directed toward

establishing the existence of numerous policies of insurance under which the victim was the

insured and Ms. Trail was the beneficiary.[21] Ms. Trail responded to this evidence by pointing

out that she did not receive proceeds from these policies. For example, while cross

examining a representative of Allianz Insurance, who testified to the existence of an

accidental death policy on Chester Trail's life with Ms. Trail as the beneficiary, defense

counsel asked the following:

Q      And isn't it true that not a single dime of the policy

---

[21]The State presented evidence of numerous polices with Chester Trail as the insured and the defendant, Ms. Trail, as the beneficiary. Some were life insurance policies and some were accidental death policies. The total value of all of the policies together equaled $685,000. Several of the policies, amounting to $543,547 of the $685,000 total, were purchased during the final two years of Chester Trail's life.

proceeds – well, first of all, all of the policy proceeds
have been paid out, have they not?

A.    Yes, they have.

Q.    And isn't it true that not a single dime of the policy
proceeds were payable in this case to Lillie Trail?

A.    That's correct.

Similarly, the following is an excerpt of defense counsel's cross examination of a

representative of Appalachian Life Insurance Company:

Q.    . . . Let's put it all in plain words.  Lillie Trail
gave up any interest in taking any proceeds on the life insurance,
is that correct?

A.    That is correct.

The foregoing portions of the record demonstrate that defense counsel implied

to the jury that, because Ms. Trail had voluntarily relinquished her right to receive proceeds

from the various policies of insurance covering her husband's life, she had no financial

motive to orchestrate his death.  Because of the presentation of this evidence to the jury, the

Slayer Statute became relevant to show that, if she was found to be guilty of participating in

the murder of her husband, Ms. Trail would be prohibited by law from receiving any

proceeds from those policies.[22]  Furthermore, the danger of unfair prejudice or confusion did

_____

[22]Assuming, for the sake of argument, that the circuit court did commit error
reading the Slayer Statute to the jury, we find such error was harmless beyond a reasonable
(continued...)

28

not substantially outweigh the probative value of the circuit court's reading of the Slayer

Statute. As made evident above, it was necessary to read the statute to place in perspective

Ms. Trail's assertions that she had received no proceeds from the insurance policies.

Accordingly, we find no abuse of discretion in the circuit court's reading of the Slayer

Statute.[23]


### D. Prosecutor's Use of the Theme of "Atonement" During Mercy Phase Closing Argument

Ms. Trail next argues that the circuit court erred by allowing the prosecuting

attorney to imply, during his mercy phase closing argument, that a finding of no mercy would

bring atonement for the victim of an unrelated crime committed by Ms. Trail.[24] The State

---

[22](...continued)
doubt.

[23]Ms. Trail also argues that a related instruction given by the circuit court was confusing and failed to cure the error created by reading the Slayer Statute to the jury. The instruction given by the circuit court follows:

> Now, ladies and gentlemen, I want to instruct you that the mere reading of this statute to you is not to be automatically drawn any inference of guilt or innocence, but you are to consider it only in light of all the evidence and the law as instructed to you in this case, as well as the arguments of counsel.

Because we find no error in the circuit court's reading of the statute to the jury, we summarily reject this issue on the merits as the instruction was adequate and not confusing.

[24]See *supra* note 4 and accompanying text for a brief description of the
(continued...)

contends that it merely adopted the defense theme of atonement in making its closing.

This Court has held that

[f]our factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

Syl. pt. 6, *State v. Sugg*, 193 W. Va. 388, 456 S.E.2d 469 (1995). However, we need not apply the *Sugg* factors in this instance because we do not find the prosecutor's comments were prejudicial.

During the mercy phase opening statement by Ms. Trail's counsel, the following relevant comments were made:

I must [seem] like a broken record. Mercy is about *atonement*, resolution, closure. Each one of you on this jury panel has a conscious. I talked to each one of you before the [trial], and I don't think any of you lost it, and that you still have it. But I think each of you . . . and a lot of others [have] been misled. And I'm hoping maybe at this phase all of us have a chance to renew things, and consider *atonement*.

---

[24](...continued)
unrelated crime.

(Emphasis added).

It is clear from this passage that the issue of atonement was interjected into the proceeding by the defense. To the extent that the prosecution then echoed the theme of atonement when it summarized the aggravating factors for showing no mercy, the defense opened the door to that theme and will not be heard to complain now. *See* Syl. pt. 4, *State v. Mann*, 205 W. Va. 303, 518 S.E.2d 60 (1999) ("A judgment will not be reversed for any error in the record introduced by or invited by the party seeking reversal." (internal citations omitted)). *Cf.* Syl. pt. 2, *State v. Bowman*, 155 W. Va. 562, 184 S.E.2d 314 (1971) ("An appellant or plaintiff in error will not be permitted to complain of error in the admission of evidence which he offered or elicited, and this is true even of a defendant in a criminal case.").[25] Consequently, we find no error.

---

[25]This Court explained the concept of "invited error" in *State v. Crabtree*, 198 W. Va. 620, 482 S.E.2d 605 (1996):

> "Invited error" is a cardinal rule of appellate review applied to a wide range of conduct. It is a branch of the doctrine of waiver which prevents a party from inducing an inappropriate or erroneous response and then later seeking to profit from that error. The idea of invited error is not to make the evidence admissible but to protect principles underlying notions of judicial economy and integrity by allocating appropriate responsibility for the inducement of error. Having induced an error, a party in a normal case may not at a later stage of the trial use the error to set aside its immediate and adverse consequences.

(continued...)

### E. Prosecutorial Statements

Ms. Trail next complains that the circuit court erred by permitting the Prosecutor to make statements to the jury improperly implying that Ms. Trail mismanaged her credit cards and her husband was looking at her bank accounts.[26] The State responds that the comment was fleeting and was supported by the evidence.[27]

---

[25](...continued)
*Id.* at 627, 482 S.E.2d at 612.

[26]Ms. Trail's brief not only fails to quote the complained of statement, she also fails to provide this court with a citation of where the statement is located in the record. She implies that the complained of comment occurred during closing argument, but makes no effort to identify at which phase of the bifurcated trial the closing comment was made. Ms. Trail provides a reference to page 102 of A.R. Vol. 10 as the location of the circuit court's failure to provide a curative instruction. Notably, however, A.R. Vol. 10 stops at page 61. Counsel is directed to Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, which requires that a petitioner's brief

> must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument *must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal.* The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

(Emphasis added).

[27]The State once again has failed to comply with Rule 10(d) of the Rules of Appellate procedure by neglecting to direct this court to the location of relevant portions of the trial record. For example, the State asserts that "[e]vidence was introduced that Petitioner was worried that the victim would eventually find out about the insurance premiums. Evidence was introduced that Petitioner was having trouble paying the premiums each
(continued...)

32

Our review of the complained of statements, which were made during the State's guilt phase closing argument, quickly revealed that this issue was not preserved for appellate review.[28] Following the complained of comment by the prosecuting attorney, the following exchange is reflected in the record:

> MR. KOONTZ [Defense Counsel]: Judge, I would have to object at this point. There's been no evidence of credit cards in this case. There's no evidence of him sniffing around the finances in this case. Mr. Blevins –
>
> THE COURT: If you would like to approach the bench, giving an objection during closing argument I'd be happy to entertain that. No more speaking objections. I won't allow it from the State and I won't allow it from the defense.
>
> MR. BLEVINS [Prosecutor]: I'll just move on to something else, Judge.

Following this dialog, Mr. Blevins resumed his closing argument.

The above excerpt shows that defense counsel began to object, but was stopped by the trial court and invited to approach the bench to assert his objection and provide the grounds therefor. Significantly, defense counsel did not accept the trial court's invitation and the State's closing argument resumed with no objection to the statement herein challenged.

---

[27](...continued)
month." Yet the State utterly fails to direct this Court to the location of the referred to evidence in the record. *See supra* note 20.

[28]We note that Ms. Trail's counsel at trial is not the same as her appellate counsel.

33

Because there was no objection, there is no accompanying ruling by the trial court for our review. As this Court previously has explained:

> Our cases consistently have demonstrated that, in general, the law ministers to the vigilant, not to those who sleep on their rights. . . . When a litigant deems himself or herself aggrieved by what he or she considers to be an important occurrence in the course of a trial . . . he or she ordinarily must object then and there or forfeit any right to complain at a later time. The pedigree for this rule is of ancient vintage, and it is premised on the notion that calling an error to the trial court's attention affords an opportunity to correct the problem before irreparable harm occurs.

*State v. LaRock*, 196 W. Va. 294, 316, 470 S.E.2d 613, 635 (1996). This Court also has made clear that,

> [t]o preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect. The rule in West Virginia is that parties must speak clearly in the circuit court, on pain that, if they forget their lines, they will likely be bound forever to hold their peace. The forfeiture rule . . . fosters worthwhile systemic ends and courts will be the losers if we permit the rule to be easily evaded. It must be emphasized that the contours for appeal are shaped at the circuit court level by setting forth with particularity and at the appropriate time the legal ground upon which the parties intend to rely.

*State ex rel. Cooper v. Caperton*, 196 W. Va. 208, 216, 470 S.E.2d 162, 170 (1996) (citation omitted). *See also* Syl. pt. 3, *O'Neal v. Peake Operating Co.*, 185 W. Va. 28, 404 S.E.2d 420 (1991) ("'Where objections were not shown to have been made in the trial court, and the matters concerned were not jurisdictional in character, such objections will not be considered on appeal.'" (citation omitted)); Syl. pt. 1, *State Rd. Comm'n v. Ferguson*, 148 W. Va. 742,

137 S.E.2d 206 (1964) (same). Because this issue was not preserved by the assertion of a

proper objection at trial, we decline to address the same.

### F.  Admission of Summary Chart

Ms. Trail next complains that the circuit court erred by admitting into evidence

a chart that summarized all of the insurance policies on Chester Trail's life.  She contends

that, because the summary chart was improperly admitted into evidence, the jury was allowed

to have possession of the chart during its deliberations.  She complains that the chart was not

entirely accurate[29] and was, therefore, misleading.  In addition, Ms. Trail complains that the

chart failed to identify the person who purchased each policy.  The State responds that the

trial court's admission of the summary chart was proper.

Although the use of summaries is governed by Rule 1006 of the West Virginia

Rules of Evidence, we cannot apply that Rule to the facts of this case for a simple reason;

Ms. Trail has failed to direct this Court to the portion of the record containing her objection

to the admission of the summary chart.  Pursuant to Rule 10(c)(7) of the West Virginia Rules

of Appellate Procedure, the argument section of the petitioner's brief "must contain

appropriate and specific citations to the record on appeal, including citations that pinpoint

---

[29]Ms. Trail contends that the chart did not accurately reflect the beneficiary of one of the policies *at the time of trial.*  This argument is disingenuous.  Ms. Trail concedes that she initially was the beneficiary listed on the policy.

35

when and how the issues in the assignments of error were presented to the lower tribunal. *The Court may disregard errors that are not adequately supported by specific references to the record on appeal.*"  (Emphasis added).  This Court previously has found issues asserted on appeal to have been waived as a result of a petitioner's failure to comply with Rule 10(c)(7).  *See, e.g., Evans v. United Bank, Inc.*, ___ W. Va. ___, ___, 775 S.E.2d 500, 510 (2015) (observing that petitioners' argument failed to meet requirements of Rule 10(c)(7), and concluding, therefore, "the issue has been waived for purposes of appeal.").  Even before the adoption of Rule 10(c)(7), this Court required an error to be preserved on the record in order to avoid waiver.  *See Caperton*, 196 W. Va. 208, 216, 470 S.E.2d 162, 170 ("The rule in West Virginia is that parties must speak clearly in the circuit court, on pain that, if they forget their lines, they will likely be bound forever to hold their peace."); *LaRock*, 196 W. Va. 294, 316, 470 S.E.2d 613, 635 ("One of the most familiar procedural rubrics in the administration of justice is the rule that the failure of a litigant to assert a right in the trial court likely will result in the imposition of a procedural bar to an appeal of that issue." (quotations and citations omitted)); Syl. pt. 3, *O'Neal v. Peake Operating Co.*, 185 W. Va. 28, 404 S.E.2d 420 ("'Where objections were not shown to have been made in the trial court, and the matters concerned were not jurisdictional in character, such objections will not be considered on appeal.'" (citation omitted)); Syl. pt. 1, *Ferguson*, 148 W. Va. 742, 137 S.E.2d 206 (same).

Because of Ms. Trail's failure to direct this Court to the portion of the record containing her objection to the admission of the summary chart, we deem this issue waived.

### G.  Sufficiency of the Evidence

Ms. Trail next argues that the trial court erred in failing to grant her motion for acquittal because the evidence was insufficient to support the verdict of guilty.  The State contends the evidence was sufficient.

In addressing this issue, we are mindful that

> [t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).  The trial court bore a similar duty in addressing Ms. Trail's challenge to the sufficiency of the evidence.

> When a criminal defendant undertakes a sufficiency challenge, all the evidence, direct and circumstantial, must be viewed from the prosecutor's coign of vantage, and the viewer must accept all reasonable inferences from it that are consistent with the verdict.  This rule requires the trial court judge to resolve all evidentiary conflicts and credibility questions in the prosecution's favor; moreover, as among competing inferences of which two or more are plausible, the judge must choose the

37

inference that best fits the prosecution's theory of guilt.

Syl. pt. 2, *LaRock*, 196 W. Va. 294, 470 S.E.2d 613. Finally, we observe the cumbrous task undertaken by a criminal defendant attempting to challenge the sufficiency of the evidence:

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

Syl. pt. 3, *Guthrie*, 194 W. Va. 657, 461 S.E.2d 163.

Upon a careful review of Ms. Trail's argument it becomes apparent that she does not challenge the absence of evidence to establish her guilt. Rather, she challenges the weight afforded that evidence by the jury. Her primary complaints are that the jury accepted the testimony of Ms. Trail's nephew, Gregory Whittington, in spite of strong evidence challenging his veracity, and the jury accepted the State's theory that her crime was motivated by her desire to obtain the proceeds of the various insurance policies covering her husband's life. The circuit court rejected this argument finding there was sufficient evidence to support the jury's verdict. The circuit court commented:

38

"[T]he Court's statement of a trial jury verdict's import, and the trial jury's inferences drawn in support of its verdict, as an element of the judicially created public policy of the State of West Virginia[,] cannot be overestimated. . . . [O]ur Court has continually reinforced its faith in, and support of, the ability and competence of a trial jury in this State to hear evidence from the witness box; to receive the Court's instruction of law; to analyze factual and legal issues; and render sound verdicts, based upon those facts and the legal principles that it determines are controlling.

We find no error.

Ms. Trail asks this Court to consider the sterile appellate record and decide that the jury made improper credibility determinations. Such a review is not a legitimate function of this Court. *See* Syl. pt. 2, *State v. Martin*, 224 W. Va. 577, 687 S.E.2d 360 (2009) ("The jury is the trier of the facts and in performing that duty it is the sole judge as to the weight of the evidence and the credibility of the witnesses." (internal quotations and citation omitted)); *Guthrie*, 194 W. Va. 657, 669, 461 S.E.2d 163, 175 ("It is well established that appellate review is not a device for this Court to replace a jury's finding with our own conclusion. On review, we will not weigh evidence or determine credibility."); *Id.*, 194 W. Va. at 670 n.9, 461 S.E.2d at 176 n.9 ("An appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact. . . . It is for the jury to decide which witnesses to believe or disbelieve. Once the jury has spoken, this Court may not review the credibility of the witnesses."); Syl. pt. 2, *State v. Bailey*, 151 W. Va. 796, 155 S.E.2d 850 (1967) ("The jury is the trier of the facts and in

performing that duty it is the sole judge as to the weight of the evidence and the credibility of the witnesses."); Syl. pt. 1, *State v. Harlow*, 137 W. Va. 251, 71 S.E.2d 330 (1952) ("In the trial of a criminal prosecution, where guilt or innocence depends on conflicting evidence, the weight and credibility of the testimony of any witness is for jury determination.").

In this case the jury heard Gregory Whittington testify that Ms. Trail hired him to murder her husband. The jury also was presented with ample evidence of Gregory Whittington's propensity to lie. It was the jury's role to weigh this evidence and to decide the credibility of Gregory Whittington's testimony. It was also for the jury to weigh the evidence of the insurance policies as a source of motive.[30] The jury heard the conflicting testimony and ultimately found Ms. Trail guilty of murder in the first degree. This Court will not disturb weight and credibility determinations made by the jury.[31]

---

[30]We note that motive is not an element of the offense of murder. *See State v. McKinley*, 234 W. Va. 143, 156, 764 S.E.2d 303, 316 (2014) ("It has been recognized that, '[w]hile proof of motive is not a required element in criminal cases, it is always relevant and admissible to prove that the accused committed the offense.' Franklin D. Cleckley, Louis J. Palmer, Jr., and Robin Jean Davis, Vol. 1, Handbook on Evidence for West Virginia Lawyers, § 404.03[2][e][iv] (2012)."); *State v. Flippo*, 212 W. Va. 560, 583 n.33, 575 S.E.2d 170, 193 n.33 (2002) ("This Court has previously observed that while it is permissible to prove the motive which prompted the commission of crime, the failure of the State to discover and prove any motive therefor is no evidence of the innocence of the accused. Motive constitutes no element of the crime itself." (internal quotations and citations omitted)); *State v. Lemon*, 84 W. Va. 25, 33, 99 S.E. 263, 267 (1919) ("While evidence to prove a motive for the killing is admissible, it is not an essential element of the crime of murder, and there is no duty on the State to prove it.").

[31]Ms. Trail's final assignment alleges cumulative error. Because we have
(continued...)

**IV.**

**CONCLUSION**

For the reasons set out in the body of this opinion, the orders of the Circuit Court of Lincoln County upholding Ms. Trail's conviction of murder in the first degree and imposing a sentence of life in prison without mercy are affirmed.

Affirmed.

---

[31](...continued)
found no errors, this assignment need not be addressed. *See, e.g., State v. Knuckles*, 196 W. Va. 416, 426, 473 S.E.2d 131, 141 (1996) (per curiam) ("[B]ecause we find that there is no error in this case, the cumulative error doctrine has no application. Cumulative error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors.").