# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**January 8, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re*: E.Y., D.L.-1, and D.L.-2

**No. 17-0791** (Calhoun County 16-JA-34, 16-JA-35, & 16-JA-36)

## MEMORANDUM DECISION

Petitioner Mother D.L.-3, by counsel Daniel Minardi, appeals the Circuit Court of Calhoun County's August 4, 2017, order terminating her parental rights to E.Y., D.L.-1, and D.L.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Tony Morgan, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in adjudicating her as an abusing parent and terminating her parental rights based upon the incompetent testimony of E.Y. and the hearsay testimony of the DHHR worker.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Upon a referral, a DHHR worker interviewed three-year-old E.Y. concerning her disclosure to her biological father that she was sexually abused by her step-father, S.L. E.Y. disclosed to the DHHR worker that S.L. touched her "piggy bug," which she identified as her vagina. She also disclosed that the abuse happened when it was dark outside and that it occurred in her bedroom at night. Further, E.Y. told the DHHR worker that S.L. hurt her and that she felt S.L. was "bad" for hurting her. Following the interview, the DHHR filed an abuse and neglect petition against petitioner and S.L. alleging that S.L. sexually abused E.Y. The petition further alleged that petitioner had knowledge of the abuse, took no action to protect E.Y., and continued

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children and petitioner share the same initials, we will refer to them as D.L.-1, D.L.-2, and D.L.-3 throughout this memorandum decision.

to allow S.L. to live in the home and have contact with E.Y., as well as the other two children, then one-year-old twins D.L.-1 and D.L.-2.

The DHHR worker subsequently interviewed petitioner, who stated there was no way S.L. could have abused E.Y. because there was never a time E.Y. was left alone with S.L. Petitioner also admitted to the DHHR worker that after she became aware of the allegations of sexual abuse, she asked E.Y. to tell S.L. what she was accusing him of and that E.Y. told petitioner that they were "bad words" and refused to repeat her disclosure to S.L. The DHHR worker also interviewed S.L., who denied ever being alone with E.Y. In November of 2016, the circuit court held an adjudicatory hearing in which it took in camera testimony of E.Y. A transcript of E.Y.'s testimony was prepared and disseminated to counsel. Due to E.Y.'s young age, the parties agreed to a competency evaluation. The adjudicatory hearing was continued four times in order to receive results of E.Y.'s competency evaluation.

In February of 2017, the adjudicatory hearing was concluded. The DHHR worker testified as to the disclosures E.Y. made during her interview with the child, as well as the disclosures made by E.Y. to her paternal great-grandmother and father. The circuit court found that although the competency evaluator found that E.Y. was not competent to testify because she lacked full understanding of truthfulness, such a finding did not preclude the circuit court from finding that the child's statements were indeed truthful. The circuit court noted that the child was consistent in her disclosures to multiple people over time, and that there was no motive for the child to lie and no evidence of any coercion which would cause her to fabricate the allegations. The circuit court found that petitioner's testimony that the sexual abuse could not have occurred because S.L. was never alone with E.Y. was not credible. Further, the circuit court found that petitioner neglected E.Y. by "allowing her to be physically and mentally harmed by an intentional refusal and failure to keep her away from [S.L]," and also noted that petitioner "chose her husband over her child." Finally, the circuit court found that E.Y. consistently disclosed the details of S.L.'s sexual abuse to her father, paternal great-grandmother, the DHHR worker, and the circuit court and adjudicated petitioner and S.L. as abusing parents.

In July of 2017, the circuit court held a dispositional hearing wherein it took judicial notice of the testimony presented at the adjudicatory hearing. Petitioner testified that she refused to believe S.L. abused E.Y. and continued to reside with and maintain a relationship with him, despite his adjudication as an abusing parent. The circuit court also found that the twins, D.L.-1 and D.L.-2 were at continued risk of harm in petitioner's care based upon petitioner's failure to address the abuse which occurred to E.Y. Furthermore, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and that termination of petitioner's parental rights was in the best interests of the children. Ultimately, the circuit court terminated petitioner's parental and custodial rights in its August 4, 2017, order.[2] It is from the dispositional order that petitioner appeals.

---

[2]In addition to the termination of petitioner's parental and custodial rights, the parental rights of the father of D.L.-1 and D.L.-2 were terminated. According to the DHHR and the guardian, the children are placed in a foster home with a permanency plan of adoption. E.Y. remains in the custody of her biological father, a non-abusing parent.

2

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

Petitioner argues that the circuit court erred in relying on the incompetent testimony of E.Y. and the hearsay testimony of the DHHR worker at both adjudication and disposition. She argues that a competency evaluation determined that E.Y. was not competent to testify and that the circuit court acknowledged the evaluator's finding that E.Y. was unable to differentiate between the truth and a lie. Further, petitioner asserts that the only other person to testify as to E.Y.'s statements was a DHHR worker and argues that the DHHR worker's testimony was inadmissible hearsay evidence. We disagree.

Petitioner is correct that a psychological examiner found E.Y. incompetent to testify. The circuit court acknowledged the fact that the evaluator reported that E.Y. was not competent to testify because of her inability to differentiate between telling the truth and a lie. However, the circuit court further found that the child's disclosures were relevant and reliable, given the fact that her recollection of the abuse remained consistent in her statements to her father, paternal great-grandmother, the DHHR worker, and the circuit court. "A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998). We have also held that

> "[a]lthough Rules 401 and 402 of the West Virginia Rules of Evidence strongly encourage admission of as much evidence as possible, Rule 403 of the West Virginia Rules of Evidence restricts this liberal policy by requiring a balancing of interests to determine whether logically relevant is legally relevant evidence. Specifically, Rule 403 provides that although relevant, evidence may nevertheless be excluded when the danger of unfair prejudice, confusion, or undue delay is disproportionate to the value of the evidence." Syllabus point 9, *State v. Derr,* 192 W.Va. 165, 168, 451 S.E.2d 731, 734 (1994).

Syl. Pt. 5, *State v. Trail*, 236 W.Va. 167, 778 S.E.2d 616 (2015). Here, the circuit court found the child's statements relevant and reliable due to their consistency over time when made to different people. The circuit court found no motive for the child to lie or any evidence of coercion which would cause her to fabricate the allegations. However, petitioner did not raise any issues of unfair prejudice, confusion, or undue delay in the circuit court proceedings or on appeal. Moreover, to the extent the circuit court did consider the child's in camera testimony, the record further shows that this same evidence was also introduced through the testimony of a DHHR worker. Accordingly, petitioner can establish no undue prejudice in such consideration. Therefore, we find that the circuit court did not abuse its discretion by considering the child's statements.

Regarding the DHHR worker's testimony, we have held that

[t]he West Virginia Rules of Evidence declare that parties must object to the wrongful offer of evidence at a particular time and with reasonable specificity. The failure to object at the time and in the manner designated by Rule 103(a) of the West Virginia Rules of Evidence is treated as a procedural default, with the result that the evidence, even if erroneous, becomes the facts of the case. West Virginia practice imposes the same duty of diligence in regard to nonjury cases. Silence in the circuit court typically constitutes a waiver of objection. *See* W.Va.R.Evid. 103(a)(1).

*Tiffany Marie S.*, 196 W.Va. at 234, 470 S.E.2d at 188. Here, the record on appeal indicates that petitioner failed to object to the DHHR worker's testimony at any hearing. Therefore, petitioner waived her right to assert a hearsay issue on appeal.

Further, the circuit court did not err in adjudicating petitioner as an abusing parent or in terminating her parental rights. West Virginia Code § 49-1-201 provides that a neglected child means a child "[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent . . . to supply the child with necessary . . . supervision[.]" Further, we have described the "clear and convincing" standard as one in which

the evidence in an abuse and neglect case does not have to satisfy the stringent standard of beyond a reasonable doubt; the evidence must establish abuse by clear and convincing evidence. This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Brown v. Gobble*, 196 W.Va. 559, 564, 474 S.E.2d 489, 494 (1996)

*In re F.S. and Z.S.*, 233 W.Va. 538, 546, 759 S.E.2d 769, 777 (2014). Here, the record on appeal shows that petitioner failed to provide her children with proper protection and supervision by allowing S.L. to continue to have contact with the children after she learned of E.Y.'s allegations of sexual abuse against S.L. The circuit court found that petitioner's testimony was not credible and that she "chose her husband over her child." Based on this evidence, the circuit court did not err in adjudicating petitioner as an abusing parent.

Finally, in regard to the termination of petitioner's parental rights, we have held that

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable[.]

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). As discussed above, petitioner stated that E.Y. was never left alone with S.L. and that she did not believe E.Y.'s allegations. However, the circuit court found these statements from petitioner not credible. The circuit court further found that petitioner caused E.Y. physical and mental harm by not keeping her away from S.L., despite knowledge of the sexual abuse.

West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) provides that no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected exists when "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]" As discussed above, petitioner continued to place her children in harm despite knowledge of E.Y.'s allegations of sexual abuse against S.L. Petitioner denied that E.Y. and S.L. were ever alone together. Petitioner did not offer any new evidence at disposition to demonstrate that she had corrected the conditions of abuse and neglect. The circuit court ultimately found no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and that termination of petitioner's parental rights was in the best interests of the children.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 4, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: January 8, 2018

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

5