# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**

**July 30, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 19-0427** (Morgan County 18-F-83)

**Michael V.,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Michael V.[1], by counsel S. Andrew Arnold, appeals his conviction in the Circuit Court of Marion County on one count of sexual abuse by a custodian in violation of West Virginia Code § 61-8D-5. Respondent State of West Virginia, by counsel Mary Beth Niday, filed a response in support of the circuit court's April 1, 2019, sentencing order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On July 18, 2018, Deputy Sheriff Dennis Jenkins observed a vehicle parked at the back of a local park where drug and sexual activity often occurred. Deputy Jenkins saw two people in the vehicle whom he later determined to be petitioner Michael V. and his sixteen-year-old stepdaughter, H.V. The deputy, who was wearing a body camera, approached the passenger side of the car and saw that H.V. had her shorts down around her ankles and a flag was covering her lap. The deputy called in the license plate number and then approached petitioner and asked him to step outside the vehicle. The deputy observed that petitioner was sweating profusely, his shirt and the groin area of his pants were wet, and he had a slightly erect penis protruding through his basketball shorts.

The deputy talked separately with petitioner who said he was returning from a softball game and had pulled into the park because he received a phone call from his grandmother. Petitioner then admitted that he was teaching H.V. "the ins and outs of everything" she should know for her boyfriend. The deputy inquired about the ejaculate on petitioner's pants. Petitioner replied, "I get excited easily I can't help it. When I talk about sex[,] I get excited." He said he was

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

"showing [H.V.] how to help herself masturbate . . . because she don't know how and she's scared." Petitioner then again addressed the ejaculate on his pants and said, "I can't help it. I'm addicted to porn. I'm a sex addict. And I get excited. But this is legitimately my daughter and I'm teaching her stuff for her boyfriend."

The deputy then spoke separately with H.V. who said that she and petitioner were only talking about petitioner's feelings.

The deputy then spoke again with petitioner who said,

> I feel things for my daughter because she's not my blood daughter. So that helped me and her have a closer relationship and there's never been any penetration, any sex, anything like that because my daughter is a virgin. And honest to God this, this right here was never about sex or anything like that this is me teaching her things because she's really f--king curious. And that's all it was.

When the deputy asked petitioner what he was teaching H.V., petitioner replied, "she had her hands down her pants fingering herself and I never even touched her, I never penetrated her, she never even touched me or nothing and, I was, I got excited." Petitioner said the worst thing he did was lean over and kiss H.V. as she was leaning back in her seat. Petitioner then admitted that he loved his daughter and had "feelings like that for her but it would never cross that line." Petitioner denied masturbating in front of H.V., and said he watched H.V. masturbate so he could explain to her how to do it.

Thereafter, petitioner's wife, who is H.V.'s mother, arrived at the park and asked petitioner if he showed H.V. how to masturbate. Petitioner replied, "well yeah, I showed her how to masturbate." He said he told H.V. "how to do it . . . and she did it with her own f--king hands." Petitioner's wife told the deputy the following: (1) H.V.'s boyfriend lived with the family and "all [petitioner] talks about is they better not have sex and let me find out she's not a virgin." (2) "My whole world is going to fall apart. We just bought a house and I don't know what I'm going to do on my own and I've got an [eighteen]-month-old baby."

Thereafter, H.V. participated in a forensic evaluation and told the forensic nurse the following: (1) She and petitioner were just having a conversation "about masturbation and French kissing." (2) Petitioner smoked a joint while they were in the car together. (3) She first engaged in sexual intercourse with her boyfriend three months before and had engaged in digital and vaginal penetration with her boyfriend on the morning of July 18, 2018.

Petitioner was indicted on September 5, 2018, on one count of sexual abuse by a custodian in violation of West Virginia Code § 61-8D-5. Petitioner's one-day jury trial took place on January 30, 2019. During the State's case in chief, it called the forensic nurse who examined H.V. The nurse testified to her report and said that H.V. told her during the forensic interview that petitioner smoked a joint in the car on the night in question.

During Deputy Jenkins's testimony, the State showed the jury the audio/video recording of the events at the park on the night of July 18, 2018.

The State then called H.V. who testified that on July 18, 2018, while she and petitioner were driving home, she asked petitioner about masturbation because she "was trying to get to the point where I would tell him that I was no longer a virgin anymore because I had sex with my boyfriend of three years." H.V. said petitioner pulled into the park so they could use the bathroom and finish their conversation. H.V. denied that petitioner taught her or showed her how to masturbate, watched her masturbate, or masturbated himself. She also said she could not understand why petitioner said he was teaching H.V. how to masturbate. H.V. testified that, when Deputy Jenkins asked her why petitioner's pants were wet, she replied, "the only reasonable explanation I can give you is that, I mean, we went to the bathroom." H.V. claimed she had her shorts on in the car the whole time and that the flag was draped over her lap so it would not get ruined. H.V. also denied that petitioner had smoked a joint in the car that night. In response, the State attempted to impeach H.V.'s testimony using the forensic nurse's testimony that H.V. told her petitioner smoked a joint in the car on the evening of July 18, 2018.

At the conclusion of the State's case, petitioner moved for judgment of acquittal claiming that, although he was shown on the audio/video recording, no one during the State's case in chief identified him as the offending party. The circuit court denied petitioner's motion and found that, in viewing the evidence in the light most favorable to the State, there was "sufficient evidence that could permit a jury to come back with a verdict of guilt."

During petitioner's case in chief, both petitioner and his wife testified. Petitioner testified that he did not remember making a statement to Deputy Jenkins because he "checked out," which he claims he does sometimes due to having Post Traumatic Stress Disorder ("PTSD") and a traumatic brain injury ("TBI") from his military service. Despite that claim, petitioner recalled the following: On the evening of July 18, 2018, he was driving home from a baseball game and was angry that his team had lost the game. He stopped for food and gas. Thereafter, he and H.V. stopped at the park to use the bathroom and to finish their conversation. He testified that H.V.

> asked me how do guys masturbate—or how do girls masturbate because guys have things to pull on and [girls] don't. So I told her, the only thing I can tell you is you can – you've got to find a spot that feels good to you and can – and rub that until something happens.

Petitioner also remembered Deputy Jenkins asking him questions about masturbation. However, petitioner denied masturbating in the car or watching H.V. masturbate. He also denied kissing H.V. despite his earlier statement to the contrary.

During petitioner's wife's testimony, she affirmed that petitioner has PTSD and TBI from his military service, and said that due to those conditions, he can be "blank, almost like he's absent" and "sweaty, fidgety, and shaky." Petitioner's wife also claimed that it was not unusual for someone with PTSD and TBI "to say off the wall things that don't make sense and falsely confess." However, petitioner's wife also affirmed that petitioner admitted to her at the park that he was teaching H.V. how to masturbate.

3

Petitioner then rested his case and renewed his motion for a judgment of acquittal. The circuit court denied that motion stating that it believed petitioner's statements could be "construed as an admission to the charge against him." In addition, the trial court found that "Deputy Jenkins' observations that he testified to today bolster the State's case." The court therefore found that the State presented sufficient evidence to establish beyond a reasonable doubt that petitioner committed sexual abuse by a custodian in violation of West Virginia Code § 61-8D-5. Thereafter, the jury found petitioner guilty of that crime.

By order entered April 1, 2019, the circuit court sentenced petitioner to not less than ten nor more than twenty years in prison. The court also imposed a $5,000 fine, registration as a sex offender for life under West Virginia Code § 15-12-2, and fifty years of supervised release under West Virginia Code § 62-12-26.

Petitioner now appeals.

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000). Further, we have held that:

> The trial court's disposition of a motion for judgment of acquittal is subject to our de novo review; therefore, this Court, like the trial court, must scrutinize the evidence in the light most compatible with the verdict, resolve all credibility disputes in the verdict's favor, and then reach a judgment about whether a rational jury could find guilt beyond a reasonable doubt.

*State v. LaRock*, 196 W. Va. 294, 304, 470 S.E.2d 613, 623 (1996).

*State v. Sites*, 241 W. Va. 430, 437, 825 S.E.2d 758, 765 (2019), *cert. denied sub nom. Sites v. W. Va.*, 140 S. Ct. 565, 205 L. Ed. 2d 362 (2019).

Petitioner first argues that the circuit court erred when it denied his motions for judgment of acquittal or, in the alternative, erred in failing to find that the verdict was contrary to the evidence. Petitioner highlights that at his trial, H.V. (1) denied that petitioner touched her sexually or engaged in any conduct that would satisfy the definition of sexual exploitation or attempted sexual exploitation; and (2) denied that petitioner kissed her. Petitioner also highlights his testimony at trial that, due to the injuries he sustained during his military service, he blacks out and suffers from PTSD and TBI. Finally, petitioner notes that the State submitted no physical evidence showing that he sexually exploited or attempted to sexually exploit H.V., and that he

4

denied committing any such acts.

Petitioner challenges the sufficiency of the evidence for his conviction under West Virginia Code § 61-8D-5(a).

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

West Virginia Code § 61-8D-5(a) provides, in part that,

> If any parent, guardian or custodian of or other person in a position of trust in relation to a child under his or her care, custody or control, shall engage in or attempt to engage in sexual exploitation of, or in sexual intercourse, sexual intrusion or sexual contact with, a child under his or her care, custody or control, notwithstanding the fact that the child may have willingly participated in such conduct, or the fact that the child may have consented to such conduct or the fact that the child may have suffered no apparent physical injury or mental or emotional injury as a result of such conduct, then such parent, guardian, custodian or person in a position of trust shall be guilty of a felony[.]

West Virginia Code § 61-8D-1(10) defines "[s]exual exploitation" . . . [as] an act whereby:

> (A) A parent, custodian, guardian or other person in a position of trust to a child, whether for financial gain or not, persuades, induces, entices or coerces the child to engage in sexually explicit conduct as that term is defined in section one, article eight-c, chapter sixty-one of this code; or
>
> (B) A parent, guardian, custodian or other person in a position of trust in relation to a child persuades, induces, entices or coerces the child to display his or her sex organs for the sexual gratification of the parent, guardian, custodian, person in a position of trust or a third person, or to display his or her sex organs under circumstances in which the parent, guardian, custodian or other person in a position of trust knows such display is likely to be observed by others who would be affronted or alarmed.

Under West Virginia Code § 61-8C-1(c), the definition of "sexually explicit conduct" includes, among other things, the following conduct, whether actually performed or simulated: "[m]asturbation" and "[e]xhibition of genitals, pubic, or rectal areas of any person in sexual conduct."

5

Petitioner bases his insufficient evidence claim on the following: (1) he does not remember making any statements to law enforcement; (2) both he and the victim denied that he did any wrongdoing; and (3) the State's only evidence from the victim was in the form of impeachment using the forensic nurse's notes taken during H.V.'s examination to show that H.V. said petitioner smoked a joint in the car on the night of the crime. Finally, petitioner claims the State's evidence was "not credible."

We first note that credibility determinations are made by the trier of fact and review of those determinations "is not a legitimate function of [the] Court." *State v. Trail*, 236 W. Va. 167, 187, 778 S.E.2d 616, 636 (2015). Thus, we will not address petitioner's credibility argument.

As for petitioner's insufficient evidence argument, we reject it. Here, the record is replete with petitioner's and H.V.'s inconsistent statements. For example, although petitioner testified that he had no memory of making inconsistent statements to law enforcement, he apparently regained his memory when his wife arrived at the scene. Specifically, petitioner admitted to his wife: "well yeah, I showed her how to masturbate" and that H.V. did so "with her own . . . hands." These statements were consistent with petitioner's recorded statements at the scene to the police. Moreover, petitioner's statements to his wife at the scene contradict petitioner's and H.V.'s trial testimony that H.V. did not masturbate in front of petitioner on the night in question. As for H.V.'s testimony, it was undermined by the statement she made during her forensic examination, i.e., H.V. told the forensic nurse that petitioner smoked a joint while they were in the car together on the night in question, but H.V. denied making that statement at trial. Petitioner's and H.V.'s testimony was also undermined by Deputy Jenkins's testimony that he observed (1) petitioner and H.V. leaning together; (2) H.V.'s shorts around her ankles; and (3) that petitioner was sweating, had a slightly erect penis, and had a wet spot on his shorts that petitioner admitted was caused when he ejaculated upon watching H.V. masturbate. Finally, it is undisputed that petitioner, as H.V.'s stepfather, qualifies as either a parent, guardian, custodian, or person in a position of trust to H.V.

Based on this record, we find that the evidence at trial was clearly sufficient to convince the jury that petitioner sexually abused H.V. by exploitation when he induced H.V. to masturbate in his presence by instructing her on how to masturbate.

Accordingly, for the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** July 30, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

6